Argued January 29, affirmed in part; reversed in part March 19,
petition for rehearing denied April 12, petition
for review denied June 19, 1973

FISHER ET AL, *Respondents—Cross-Appellants, v.*
CLACKAMAS COUNTY SCHOOL DISTRICT 12
ET AL, *Appellants,* BENNETT ET AL,
*Intervenors-Appellants.*

507 P2d 839

*Ferris F. Boothe,* Portland, argued the cause for appellants and intervenors-appellants. With him on the briefs were Black, Kendall, Tremaine, Boothe & Higgins, Portland, and George L. Hibbard and Hibbard, Caldwell, Canning & Schultz, Oregon City.

*Herbert H. Anderson,* Portland, argued the cause for respondents—cross-appellants. With him on the brief was Henry H. Hewitt, Portland.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C.J.

This is a suit in equity brought by plaintiffs taxpayers against defendants Clackamas County School District 12,[1] its board, clerk, and superintendent, to enjoin defendants from using classroom space in St. John the Baptist school (hereinafter "St. John's school") to conduct classes for students of the parochial school. Intervenors are taxpayers in School District 12 and their minor children who attend schools in the district. They have united with the defendants in

[1] District 12 is the successor to School District No. 1, Milwaukie, of Clackamas County, the district named in the original complaint.

resisting the claims of the plaintiffs. From an order of the trial court granting in part and denying in part the injunctive relief sought, all parties appeal.

St. John's school is a parochial school maintained and operated by the Catholic church. Plaintiffs contend that the furnishing of teachers, textbooks, and teaching aids to the students of St. John's school constitutes a benefit to religious institutions in violation of Oregon Constitution, Art I, § 5.[2]

Defendants and intervenors answer that the teachers and texts are not being furnished to St. John's school, but to two bona fide public schools using classroom space in St. John's school building; namely, Rowe Junior High Annex and Milwaukie Elementary Annex.

■ We find that defendants' contention is not supported by the record, and that the aid in question benefits a religious institution in violation of Oregon Constitution, Art I, § 5, as interpreted by *Dickman et al v. School Dist. 62C et al*, 232 Or 238, 366 P2d 533, *cert denied* 371 US 823 (1962). Therefore, we do not reach plaintiffs' further contentions that the program in question also violates the First Amendment to the Constitution of the United States; constitutes the imposition of a tax for a special nonpublic purpose thereby depriving plaintiffs of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution; and violates Oregon Constitution, Art VIII, § 2, in that the sums expended are not exclusively applied

---

[2] Oregon Constitution, Art I, § 5 provides:

"No money shall be drawn from the Treasury for the benefit of any religeous (sic), or theological institution, nor shall any money be appropriated for the payment of any religeous (sic) services in either house of the Legislative Assembly."

to the support and maintenance of common schools in defendant school district.

The Catholic church operates St. John's school for grades one through eight within the boundaries of Clackamas County School District 12. The two programs in dispute were entered into by agreement between defendant School District 12 and St. John's school, and consisted of what defendants denominate a "shared time" program for seventh and eighth grade students of St. John's school, and a "released time" program for the fifth and sixth grade St. John's students.[9] The two programs are dissimilar in several respects, and will be described separately.

I

The "shared time" program was instituted in 1968. The seventh and eighth grade students in the program attend classes during seven periods each school day. In four of the periods their teachers are public school teachers under the employment and direction of defendant school district. The subjects taught by these teachers are language arts, social studies, mathematics, and science. Four classrooms within the St. John's school building are set aside for use by these four teachers. All religious symbols have been removed from these classrooms. The program thus carried on is referred to as the "Rowe Junior High Annex."

The remaining three subjects, art, music and religion, are taught by St. John's school instructors in other classrooms in the same building, where there are some religious symbols. The parochial school main-

---

[9] Whether these programs actually fall within the usual definition of "shared time" and "released time" we need not here consider.

tains and supervises the physical education program, study halls, cafeteria and auditorium used by all students attending St. John's school.

The students in this program are divided into five sections; each section is based in a "home room" from which students move out to other classes. The five "home rooms" are staffed by the four public school teachers and by Sister Clare, of St. John's school, who teaches religion. The students rotate by section through their daily curriculum of seven subjects so that, at a given hour, some of the students are receiving instruction from defendant school district teachers while others are being taught by teachers of St. John's school.

Students in this program are registered with St. John's school, which then gives the registration list to the head teacher of Rowe Junior High Annex. From that list students are enrolled in the Annex, each student thus having a dual registration.

The testimony at trial indicated that St. John's school board requested the "shared time" program because it was financially unable to continue functioning. The defendant school board agreed to the program because it was considerably less expensive than assuming complete responsibility for the parochial students' education. Rowe Junior High enrollment consists solely of St. John's school students.

II

The "released time" program began in 1969. Fifth and sixth grade students participating in the program are full-time students of Milwaukie Elementary Annex, as the unit is called. They receive instruction in their "home room" from a single public school teacher. Re-

ligious symbols have been removed from the two rooms used in the program. The students are released for a total of 120 minutes a week of religious instruction in accordance with the provisions of ORS 339.420,[4] in four thirty-minute periods, to receive religious instruction from Catholic Sisters teaching at St. John's school. The religious instruction is given in classrooms other than those used for the Milwaukie Elementary Annex program.

There are other fifth and sixth grade students being taught by St. John's school teachers within the physical facilities of St. John's school. The decision as to which of the students shall attend Milwaukie Elementary Annex and which St. John's school is made by the St. John's school administration.

The "released time" program was requested by St. John's school board and agreed to by the defendant district because it, too, was felt to be mutually financially advantageous. Although St. John's originally requested that the defendant district "lease" the classrooms used, there is no evidence that a written lease ever materialized, and defendant school district admitted that it paid no rent under the oral agreement.

The enrollment at Milwaukie Elementary Annex likewise consists solely of students of St. John's school.

### III

The trial judge held that the seventh and eighth grade "shared time" program violated the United States and the Oregon Constitutions and issued an injunction prohibiting continuation of the program.

---

[4] ORS 339.420 provides:

"Upon application of his parent or guardian, a child attending the public school may be excused from school for periods not exceeding 120 minutes in any week to attend weekday schools giving instruction in religion."

He found the "released time" program constitutional except in so far as the St. John's school administration decided which of its students should attend the public school program. The injunction against the "released time" program was denied, except that the defendants were enjoined from allowing St. John's school to participate in determining assignment of students to the program. The court's order did not require that children be assigned to the Milwaukie Elementary Annex on the same basis that children are assigned to other schools within District 12, namely, based on their place of residence.

The decisive question in this case is whether defendants have, as they claim, succeeded in creating two bona fide public schools which can constitutionally receive the teachers and supplies furnished by defendants. If they have not, then the aid furnished does benefit St. John's school, a religious institution, in violation of Oregon Constitution, Art I, § 5, as interpreted by the Supreme Court in *Dickman et al v. School Dist. 62C et al,* supra.

Defendants contend that *Dickman* was overruled, in effect, by the United States Supreme Court in *Board of Education v. Allen,* 392 US 236, 88 S Ct 1923, 20 L Ed 2d 1060 (1968). In that case, the "child benefit" theory was adopted in interpreting the First Amendment to the United States Constitution. That theory was considered and expressly rejected in *Dickman,* and the court observed that in interpreting the state constitution it was not bound by decisions of the United States Supreme Court interpreting the federal constitution. We are bound by the decision and reasoning of the Oregon Supreme Court in *Dickman.*

In *Dickman,* the court held that the furnishing of

textbooks to parochial school students violated the Oregon Constitution, Art I, § 5. If furnishing of textbooks alone is prohibited, furnishing teachers and teaching aids must likewise be unconstitutional.

We have been cited to one case which purports to define "public school" in this context: *Traverse School Dist. v. Atty. Gen.,* 384 Mich 390, 415, 185 NW2d 9, 19-20 (1971). In that case, the Michigan Supreme Court held that:

> "Premises occupied by lease or otherwise for public school purposes under the authority, control and operation of the public school system by public school personnel as a public school *open to all eligible to attend a public school* are public schools * * *." (Emphasis supplied.)

This definition has not been challenged by the parties, and we have found no Oregon statutes or case law which would preclude its application to this case.

■ It is clear that enrollment in a public school must be open to all eligible to attend, and that eligibility cannot constitutionally be determined solely on the basis of religion.[9] In the case before us, it is conceded that the students in Rowe Junior High Annex and Milwaukie Elementary Annex are selected solely from students of St. John's school, an admittedly religious educational institution.

The constitutional problems involved in the defendants' programs were considered in *Johnson v. Sanders,* 319 F Supp 421, 430 (D Conn 1970), *aff'd* 403 US 955 (1971), where the court concluded:

> "Had the State taken complete and literal con-

---

[9] *See, generally,* ORS 343.045 to 343.550 for public school programs having limited eligibility based on other than religious considerations.

trol of the contracting schools and made their entire secular curricula part of its public system for all purposes, by hiring the teachers, renting the facilities, and admitting the students, various aspects of the Act plainly would run afoul of the Establishment Clause. The State could not itself maintain an educational establishment providing secular classes closely integrated with religious instruction, symbols, and observances—even if the latter were the sole responsibility of private groups—in the same buildings during regular school hours. Compare People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S. Ct. 461, 92 L. Ed. 649 (1948), with Zorach v. Clauson, 343 U.S. 306, 72 S. Ct. 679, 96 L. Ed. 954 (1952); see also Abington School District v. Schempp [374 US 203, 83 S Ct 1560, 10 L Ed 2d 844 (1963)], *supra. Also, a public institution could not use religious affiliation as a prerequisite for admission to its own academically-selective classes without improperly favoring that religion.* See Everson v. Board of Education, 330 U.S. at 16, 67 S. Ct. 504, 91 L. Ed. 711; cf. Sherbert v. Verner, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963) * * *." (Emphasis supplied.)

Both programs, in effect, use religious affiliation as a prerequisite for admission. This is so whether or not the St. John's school administration decides which of its students shall attend which program, so long as only St. John's students are eligible for the "public" school programs.

Whatever other infirmities might exist in these programs, the exclusion of all but parochial school students from consideration for enrollment, and the making of placement decisions as to these students on religious rather than the customary geographical criteria is, in itself, fatal to defendants' claims that Rowe Junior High Annex and Milwaukie Elementary Annex

are public schools. Under these programs, the state pays the salaries of the teachers who teach only parochial school students. This subsidy contravenes Oregon Constitution, Art I, § 5. *Dickman et al v. School Dist. 62C et al,* supra. *See, Americans United for Sep. of Church & State v. Paire,* 348 F Supp 506 (D NH 1972).

The order of the trial court enjoining the continuance of the "shared time" program (Rowe Junior High Annex) is affirmed.

The order denying the injunction against the continuance of the "released time" program (Milwaukie Elementary Annex) is reversed. The trial court is directed to enter a decree enjoining continuance of the "released time" program as presently operated.

Affirmed in part; reversed in part.